You have requested our opinion whether a campaign finance entity registered with the State Board of Elections ("SBE") may expend funds in the form of a contribution to a political party designated exclusively for its ongoing administrative expenses. You advise that, consistent with past legal advice construing prior versions of the State Campaign Finance Law, SBE has prohibited such expenditures by Maryland campaign finance entities. You have asked us to review this advice in light of suggestions by the two principal political parties in Maryland that the SBE's policy conflicts with prior Attorney General opinions and the current version of the Campaign Finance Law.
The Campaign Finance Law explicitly permits a campaign finance entity to transfer up to $6,000 to a political party during a four-year election cycle. Under the longstanding interpretation of the Campaign Finance Law, if an individual or entity contributes funds to a political party and specifies that they be used only for the party's ongoing administrative expenses — as opposed to expenses associated with a particular election cycle — the contribution is not subject to the limits set by the Campaign Finance Law. However, unlike other potential contributors to a political party, a campaign finance entity may expend funds only to "promote or assist in the promotion of the success or defeat of a candidate, political party, or question at an election." In our opinion, if a campaign finance entity were to make a contribution (i.e., transfer) to a political party with the proviso that it couldonly be devoted to the party's ongoing administrative expenses unrelated to any particular election, that expenditure would be for a nonelectoral purpose and would not be a permissible expenditure by the campaign finance entity under the Campaign Finance Law.[1]
 I Background
A. Statutory Framework
The State Campaign Finance Law, also previously called the Fair Election Practices Act, is set forth in Annotated Code of Maryland, Election Law Article ("EL"), § 13-101 et seq. Under that law, campaign finance activity for an election must generally be conducted through a "campaign finance entity." See EL § 13-202(a). A campaign finance entity is a political committee established under the Campaign Finance Law. EL § 1-101(h).[2] A political committee is "a combination of two or more individuals that assists or attempts to assist in promoting the success or defeat of a candidate, political party, or question submitted to a vote at any election." EL § 1-101(ff).[3] A campaign finance entity is to file regular reports with SBE of all contributions received and expenditures made.[4] See EL § 13-304. SBE has long treated political parties as campaign finance entities and required that the central committees of parties file campaign finance reports.[5]
A campaign finance entity is funded by contributions from donors. The State election law defines a "contribution" as "the gift or transfer, or promise of gift or transfer, of money or other thing of value to a campaign finance entity to promote or assist in the promotion of the success or defeat of a candidate, political party, or question." EL § 1-101(o)(1). In somewhat similar terms, the statute defines "expenditure" in part as "a gift, transfer, disbursement, or promise of money or a thing of value by or on behalf of a campaign finance entity to. . . promote or assist in the promotion of the success or defeat of a candidate, political party, or question at an election." EL § 1-101(y) (emphasis added). Assets of a campaign finance entity may be disbursed only if they have passed through the hands of its treasurer and are spent in accordance with the purposes of the entity. EL § 13-218(b)(1). Expenditures by a party central committee must also be under the authority and direction of its chairman. El § 13-218(c).
The Campaign Finance Law generally caps a donor's contributions during an election cycle at $4,000 to any one campaign finance entity, and $10,000 to all campaign finance entities in the aggregate. See EL § 13-226. The limits do not apply to: contributions to a ballot issue committee[6]; aggregate in-kind contributions by the central committee of a state or local political party during an election cycle in an amount of $1 for every two registered voters[7]; transfers by one campaign finance entity to another campaign finance entity in a cumulative amount of $6,000 or less during an election cycle[8]; and contributions to the administrative account of a political party. The last exception to the contribution limits is not explicitly provided in the statute, but has been developed in a series of Attorney General opinions beginning three decades ago.
B. Contributions for Administrative Expenses ? Attorney GeneralOpinions
As a prior opinion noted, the Campaign Finance Law is often difficult to comprehend and susceptible to conflicting interpretations. The practical application of that law has been guided for several decades by SBE's administrative practices in light of the "common law" developed in Attorney General opinions. 70 Opinions of the Attorney General 96 (1985). A series of opinions and advice letters has explicated the reasons why a donation to a political party for ongoing administrative expenses is subject to reporting requirements, but is not assessed against the donor's statutory contribution limits. Those opinions acknowled ge difficulty in reconciling the language of the law with its underlying policies. Id. at 96 (noting that the Act's provisions governing political committees and contributions are "especially troublesome, both in concept and practice" and offer "singularly little guidance"); see also 68 Opinions of the Attorney General 252, 255 (1983).
1974 Opinion: Political Parties Subject to ReportingRequirements
In 1974, in response to an inquiry from the Administrator of the State Administrative Board of Election Laws, the predecessor of SBE, Attorney General Burch considered the extent to which contributions to, and expenditures by, the central committee of a political party were subject to the reporting requirements of the campaign finance law. 59 Opinions of the Attorney General 318, 323 (1974) ("1974 Opinion"). He noted that the definitions of "contribution" and "expenditure" in that law included, as they do now, monies given or spent to promote or aid in the success of a political party. He concluded that central committees of political parties "must report all of their contributions and all of their expenditures regardless of when they occur," reasoning that "central committees function continuously and presumably all money which they receive and spend is intended to promote or aid the success of the party, whether at or between elections." Id.
1975 Opinion: Contributions for Party's Nonelectoral Expenses NotSubject to Limits
The following year, the Administrator followed up by asking whether a corporation's monetary donation to a party that was specifically designated for maintaining the party's normal headquarters office and staff was a "contribution" subject to the reporting requirements and, if so, whether that contribution should be charged to the corporation's statutory limit.[9] Reiterating the reasoning of the 1974 Opinion, Attorney General Burch first concluded that a donation made for the purpose of promoting the success of a political party was a "contribution" regardless of whether the money was destined for use by a particular candidate or for any particular election. 60 Opinions of theAttorney General 259, 260-61 (1975).
However, he observed that the statutory limit on contributions applied to contributions given "in any primary or general election."Id. at 261. Because the contribution in question did not relate to any particular election, the Attorney General reasoned that it was not subject to the contribution limit. Attorney General Burch stated that, "[g]iven the fact that the donation is specifically limited to maintaining the party's normal headquarters office and staff, we do not believe that it can be charged against the aggregate contribution limit. . . . ." Id. at 262 (emphasis in original). By contrast, the contribution would arguably be chargeable against the limit if it were linked to the election — if, for example, "the donation in question were to be used for enlarging the headquarters and staff in an election year." Id. (emphasis in original).[10]
1978 Opinion: Contributions for Ongoing Administrative Expenses NotSubject to Limits
Attorney General Burch reaffirmed this advice three years later in response to a question concerning an independent political committee established by a corporation. 63 Opinions of the Attorney General 263 (1978). The political committee intended to seek voluntary contributions from the corporation's employees and in turn make contributions to candidates for State and local offices, including both candidates designated by the contributing employees and others chosen by the political committee. The corporation planned to make a one-time donation for the "start-up" costs and also to fund the "recurring" administrative and compliance costs of the political committee. Employing the same reasoning as the 1974 and 1975 opinions, Attorney General Burch first concluded that the corporate donation for start-up administrative expenses was a "contribution" for purposes of the State election law but, because it was not related to any particular election, the contribution was not chargeable against the limits on the corporation's contributions. Id. at 269.
Although the treatment of recurring administrative costs presented "a more difficult question," he determined that these contributions would also not count against the contribution limit because the contributions would not benefit any particular candidate and because the donor corporation had complete control over the use of the contributions for administrative purposes. Id. at 271. "Because of these two elements — the lack of any benefit to a candidate and the total control of the use of the contributions by the donor — it is our view that this corporation's contributions to its independent continuing political committee for administrative and compliance expenses. . . is not a contribution in connection with any particular primary, general or special election [and] should not be chargeable against the contribution limitations. . . ." Id.
1983 Opinion: Distinguishing Contributions for Electoral andNonelectoral Purposes
In a 1983 opinion concerning the treatment of contributions for newsletters, Attorney General Sachs echoed the reasoning of the opinions concerning administrative expenses. 68 Opinions of the AttorneyGeneral 252 (1983) ("1983 Opinion"). He concluded that the statutory contribution limits did not apply to gifts to an incumbent officeholder for a non-electoral constituent newsletter; however, once a constituent newsletter became an electoral newsletter, any contributions for it would be subject to those limits. Id. at 259-60. Attorney General Sachs summarized a basic governing principle:
 A solicitation of funds for a politician or a political entity must make clear to potential donors whether or not the donation is within the scope of the [Campaign Finance Law]. If the donation is not within the scope of the [law] — that is, if it is given with the understanding that is to be applied to a nonelectoral use such as a constituent newsletter — it may not then be converted to electoral use.
Id. at 265. Similarly, while campaign contributions could legitimately be used for an electoral newsletter, they could not be devoted to a nonelectoral newsletter. "In our view, just as funds given for nonelectoral purposes may not be converted to electoral use, funds given for electoral purposes may not be converted to nonelectoral use. . . [A] donor is entitled to know what kind of donation he or she is in fact making and to have the general purpose for that donation carried out."Id. at 266. While "an expenditure of campaign contributions for an electoral newsletter is certainly proper [and] would surely be within the contemplation of most contributors[,]. . . But. . . outlays for a constituent newsletter cannot be said `to promote. . . the success. . . of any candidate.'" Id. at 267 (quoting Article 33, § 1-1(a)(7)) (emphasis in original quotation).[11]
1985 Opinion: Allowing Isolated Nonelectoral Expenditures byPACs
Two years later, Attorney General Sachs qualified that conclusion in an opinion concerning permissible disbursements by a continuing political committee that was not organized to advance any particular candidate. Such committees "seek to advance the interest of some entity (for example, a corporation, labor union, trade association, or environmental group) through the support of numerous candidates. These are classic political action committees — PACs." 70 Opinions of theAttorney General 96, 99 (1985) ("1985 Opinion"). Noting that "by its very nature a PAC has broader interests than a candidate-related committee," he stated that "a broad view ought to be adopted as to the permissible range of outlays by a PAC." Id. at 101. Thus, he concluded that "we would view with tolerance isolated, politically related outlays by a PAC even if they are at best only indirectly related to elections. . . [s]o long as these outlays are minimal, compared to transfers or other expenditures that plainly are for electoral purposes." Id. at 101-02. Outlays for nonelectoral purposes were not "expenditures" under the campaign finance law. Id. at 101.
However, because the PAC decides how the funds "can best be spent for nonelectoral purposes," the donor has no control over how the funds are spent. Id. at 102. Thus, unlike the situation in the 1978 opinion, where this Office concluded that the contribution would not be charged against the statutory limit, Attorney General Sachs reasoned that "`the total control of the use of the contributions by the donor'- is absent;" he therefore concluded that "the full amount of the contribution is chargeable against the contribution limitations." Id. at 102. On the other hand, the contribution limit would be inapplicable if the contributor specifies that the contribution is to be used for nonelectoral purposes, and the committee segregates such funds.Id. at 103 n. 2 (citing 63 Opinions of the Attorney General at 271).
Basic Principles Stated in Campaign Finance Opinions
The opinions outlined above set forth several basic principles:
Political parties subject to reporting requirements. All contributions and expenditures of a political party are subject to the reporting requirements of the campaign finance law, even if they do not relate to a particular election. (1974 Opinion).
Contributions for ongoing administrative expenses not subject tostatutory limits. Political parties and political committees have ongoing nonelectoral administrative expenses; a donor may designate a contribution for the ongoing administrative expenses of a political party; while such a contribution must be reported under the Campaign Finance Law, it does not count against the donor's statutory contribution limits. Donor intent, and the party's compliance with that intent, govern treatment of the contributions. (1975 Opinion, 1978 Opinion).
Expenditures by campaign finance entities for electoral purposes. Funds are contributed to a campaign finance entity for electoral purposes. Funds contributed for electoral purposes cannot be diverted to nonelectoral purposes. Accordingly, apart from its own administrative expenses, a campaign finance entity may expend funds only for an electoral purpose, except for an occasional, isolated expenditure by a PAC. Donor intent governs, and the campaign finance entity must carry out that intent. (1983 Opinion, 1985 Opinion).
Later Revisions of Campaign Finance Law
In 1991, the General Assembly enacted a comprehensive revision of the campaign finance law. Chapter 617, Laws of Maryland 1991. In the revised statute, the provision governing contribution limits was keyed to an "election cycle" rather than "primary or general election." See
Article 33, § 26-9(d)(1) (1990 Repl. Vol. 1991 Supp.). There is no indication in the legislative history of the 1991 revision that the substitution of the new language was intended to change the law concerning administrative contributions or to overrule the prior Attorney General opinions on this subject.
An advice letter of this Office shortly after the passage of the 1991 legislation concluded that the law with respect to administrative contributions had not been changed. The question posed concerned what limitation, if any, applied to a contribution of office space to a county central committee if the office space was contributed on an ongoing basis and the size of the office did not increase or decrease during any period of the election cycle. "Although the 1991 legislation no longer employs a `per election' concept for allocation of contributions, the legislation did not significantly alter the definition of contribution for the purpose of the question you posed." Letter of Assistant Attorney General Elizabeth Nilson to Delegate Robert L. Flanagan (July 23, 1991). Thus, this Office advised that an in-kind administrative contribution, in the form of office space, to a party central committee should continue to be treated in accordance with the 1975 Opinion — i.e., reported as a contribution, but not charged to the donor's aggregate limit. If additional space were added for activities related to a particular election, the market value of that space would be chargeable against the donor's limits.Id.
In 2002, as part of the code revision process, the General Assembly enacted the language of the current contribution limit provision — EL § 13-226. The Election Law Review Committee noted in the Revisor's Note that "it is the long-standing view of the Office of the Attorney General that a donation of money or any other valuable thing to [the political committee of] a political party for maintaining the party's normal headquarters office and staff is not chargeable against the donor's contribution limits under this section." Referring to the 1975 Opinion and Ms. Nilson's 1991 letter, the Committee stated that it "does not intend for the revision of former Art. 33, § 13-212 to affect these former interpretations." The General Assembly has not subsequently amended EL § 13-226 to overrule those interpretations.[12]
C. SBE Administrative Practice
Consistent with the prior advice from this Office, SBE's existing practice permits a person to make an unlimited contribution to a party's central committee under certain conditions. See State Board of Elections, Summary Guide to Maryland Candidacy and Campaign Finance Laws, 7.17 (Revised July 2006).[13] If the contribution is earmarked as an administrative contribution, it will not count against the donor's statutory contribution limit. Id., ¶ 1. When a contribution to a party is also an expenditure by a campaign finance entity, SBE applies the advice governing expenditures of campaign finance entities — i.e., a campaign finance entity may not make contributions to a party designated for a nonelectoral administrative purpose. Id . The S B E Summary Guide also indicates that a party may use contributions designated for administrative expenses only for non-campaign expenses and may not commingle those contributions with other campaign funds. Id., ¶ 2.
The Maryland Republican Party ("Maryland GOP") has recently questioned SBE's policy prohibiting expenditures by campaign finance entities designated for ongoing administrative expenses of political parties.See Letter of T. Sky Woodward to Jared DeMarinis (March 27, 2007). It argued that the policy, and the legal advice on which it was based, is contrary to the 1975 Opinion; is undermined by EL § 13-247, which specifically authorizes state campaign finance entities that are winding down to contribute an unlimited amount of surplus funds to political parties; and is contrary to "more than thirty years of application."
In response to our request for comment on the issue raised by the Maryland GOP, the Maryland Democratic Party also expressed disagreement with the SBE policy.[14] See Letter of Neil P. Reiff and Joseph E. Sandler to Assistant Attorney General Robert N. McDonald (April 23, 2007). The Democratic Party stated that a "contribution" need not relate to a particular election and that the 1975 Opinion treated disbursements to party committees for administrative purposes as "contributions." Accordingly, it contended, "nothing in M aryland law prohibits a [campaign finance entity] from making a monetary disbursement that qualifies as a "contribution" but not as a "transfer" or "expenditure."Id.
 II Analysis
You have asked whether a campaign finance entity may make a contribution to a political party designated for the party's ongoing administrative expenses.
As outlined above, a donor may contribute funds to a party designated for ongoing administrative expenses; while that contribution must be reported under the Campaign Finance Law, it will not be charged against the donor's statutory contribution limits. See 1975 Opinion, 1978 Opinion. A campaign finance entity, however, is not like other donors. Unlike other donors, it may transfer up to $6,000 to a party (i.e., another campaign finance entity) during an election cycle without any specific restriction on the use of the funds. EL § 13-227(c). But also unlike other donors, it may not, as a general rule, make an expenditure for a nonelectoral purpose.[15] See EL § 1-101(y) ("expenditure" defined as ". . . disbursement. . . of money or a thing of value by. . . a campaign finance entity to. . . promote. . . the success or defeat of a candidate, political party, or question at an election. . ."). By definition, a contribution designatedsolely for the ongoing administrative expenses of a political party would be an expenditure for a nonelectoral purpose. Thus, in our opinion, a campaign finance entity may not make such a contribution.
Relying on language that appears in the 1974 Opinion that was also quoted in the 1975 Opinion, the Maryland GOP suggests that an expenditure by a campaign finance entity need not relate to a particular election and that a campaign finance entity may therefore designate a contribution to a party for administrative expenses. The Maryland GOP points to Attorney General Burch's statement that political parties "function continuously and presumably all money which they receive and spend is intended to promote or aid the success of the party, whether at or between elections." 59 Opinions of theAttorney General 318 (1974) (emphasis added).
There are several problems with this suggestion. First, the quoted passage from the 1974 Opinion refers to a central committee's obligation to report all contributions and expenditures, even if made in a non-election year and without a link to a particular election; the Maryland GOP thus confuses a statement concerning a party's obligation to report contributions with the limits on permissible expenditures by a campaign finance entity.[16] See 60 Opinions of the AttorneyGeneral at 260-61. Second, the 1975 Opinion concerned the treatment of a contribution by a corporation, not by a campaign finance entity subject to restrictions on expenditures. Third, in order for a donation not to count against the contribution limit, the 1975 Opinion reasoned that the contribution must not relate to a particular election. See id. at 262 (suggesting that the donation would be "deemed to relate to the general election held in that year" and should be charged against the limit "if the donation in question were to be used for enlarging the headquarters or staff in an election"). Finally, the argument advanced by the Maryland GOP is inconsistent with the emphasis in the 1983 Opinion and 1985 Opinion on the importance of carrying out the donor's intentions, which are frustrated if a campaign finance entity directs an expenditure for a nonelectoral purpose apparently inconsistent with the intentions of its own donors.[17]
The Maryland GOP has also called attention to EL § 13-247, which, as it acknowledged, applies only to campaign finance entities that are winding down. In that situation, the statute authorizes a campaign finance entity to dispose of its remaining funds by, among other things, contributing the funds to a state or local central committee. EL § 13-247(1). The Maryland GOP suggests that, because this statute expressly authorizes a contribution in these circumstances, a campaign finance entity must necessarily be permitted to make contributions designated for the administrative expenses of a party. However, EL § 13-247 also permits the campaign finance entity to dispose of its remaining funds by contributing to a charitable organization. See EL § 13-247(3). No one would seriously contend that allowing a campaign finance entity that is winding down to contribute to a charity authorizes the entity to make substantial contributions to a charity as part of its normal operations. For the same reason, the authorization for an entity that is going out of existence to give surplus funds to a party committee, without regard to the intent of the original donors or to any particular election, is not a general authorization to make such contributions in other circumstances.
Like the Maryland GOP, the letter of the Maryland Democratic Party does not take into account all of the principles set forth in the opinions on the issue of administrative expenditures. While it believes that State law permits a campaign finance entity to make contributions to a party designated for the party's ongoing administrative —i.e., nonelectoral expenses — the 1983 Opinion rejected this view, stating that "funds given for electoral purposes may not be converted to nonelectoral use." 68 Opinions of the Attorney General at 266. Moreover, EL § 13-218, which authorizes a treasurer of a campaign finance entity to maintain assets "received by or on behalf of a campaign finance entity. . . for the purposes of a campaign finance entity," provides that such assets "may be disbursed only. . . in accordance with the purposes of the entity." (emphasis supplied). A campaign finance entity serves an electoral purpose; its expenditures must be in accordance with that purpose. It may not make an unlimited contribution to a party for a nonelectoral purpose — i.e., the party's ongoing administrative expenses.
 III Conclusion
For the reasons stated above, a campaign finance entity may expend funds only to "promote or assist in the promotion of the success or defeat of a candidate, political party, or question at an election." In our opinion, if a campaign finance entity were to make a contribution (i.e., transfer) to a political party with the proviso that it couldonly be devoted to the party's ongoing administrative expenses unrelated to any particular election, that expenditure would be for a nonelectoral purpose and would not be a permissible expenditure by the campaign finance entity under the Campaign Finance Law.
Douglas F. GanslerAttorney General
Mark J. DavisAssistant Attorney General
Robert N. McDonaldChief Counsel Opinions and Advice
[1] We thus confirm the answer previously provided in a memorandum of advice. See Memorandum of Assistant Attorney General Mark J. Davis to Jared DeMarinis (May 16, 2006).
[2] Until recently, a candidate also had the option of designating a personal treasurer as his or her campaign finance entity. The Legislature eliminated that option during its 2006 session. Chapter 510, Laws of Maryland 2006.
[3] Not every political committee is a campaign finance entity; a political club does not fall within the definition of a campaign finance entity. See EL §§ 13-207(a), 13-208(a) (exempting political clubs from organizational requirements of Title 13).
[4] A candidate's authorized political committee that states by affidavit that it does not intend to raise contributions or make expenditures of $1,000 or more is not required to file a campaign finance report. EL § 13-305.
[5] While the Campaign Finance Law does not explicitly require a political party to maintain records and file campaign finance reports, a number of its provisions refer to a party's obligations in regard to such records and reports. See EL §§ 13-215(b)(2) (permitting incumbent member of a central committee who is a candidate for party office to act as treasurer of that committee); 13-218(c) (providing that the treasurer of a central committee of a political party may not make any disbursements of the central committee's assets, or incur any liability on its behalf, without the authority of the chairman of the central committee). In practice, political parties file campaign finance reports. See generally 68 Opinions of the Attorney General 252, 257 n. 3 (1983) (noting that campaign finance law was confusing as to reporting requirements of partisan organizations, but concluding that they must comply with the reporting requirements).
[6] See EL § 13-226(a)(1). A "ballot issue committee" means "a political committee that is formed to promote the success or defeat of a question to be submitted to a vote at an election." EL § 1-101(f).
[7] See EL § 13-226(c).
[8] See EL § 13-227(c). A "transfer" is defined as "a monetary contribution that is made by one campaign finance entity to another campaign finance entity, other than one made by or to a political club." EL § 1-101(ss). The limit on transfers does not apply to a transfer to a ballot issue committee or between or among certain campaign finance entities. See EL § 13-227(b).
[9] The contemporary definition of "contribution" in § 1-1(a)(5) of Article 33, which contained the State election law at that time, was similar to the current language of EL § 1-101(o), except that the former definition tied the contribution to "the promotion of the success or defeat of any candidate, political party, principle or propositionsubmitted to a vote at any election." (emphasis added).
[10] A contribution to enlarge a party's facilities permanently to accommodate future operations and not for the purpose of making a special effort in a particular election, would not be subject to the contribution limits. Letter of Assistant Attorney General Jack Schwartz to Christopher Collins (November 14, 1989).
[11] Article 33, § 1-1(a)(7) defined an "expenditure" in part as "any. . . disbursement. . . of money or valuable thing by any candidate, treasurer, or other agent of such candidate, political party or partisan organization to promote or assist in the promotion of the success or defeat of any candidate, political party, principle or proposition submitted to a vote at any election."
[12] The only amendment to EL § 13-226 since 2002 permitted monetary contributions in excess of $100 to be made by credit card. See
Chapter 144, Laws of Maryland 2004.
[13] SBE is required to summarize the campaign finance laws in summary guide that is distributed to candidates and their committees. EL § 13-103.
[14] Neither of the other two recognized political parties — the Green Party and the Libertarian Party — responded to the request for comment.
[15] The 1985 Opinion recognized a qualification to this rule when the donor specifies that the contribution to a campaign finance entity is to be used for nonelectoral purposes, and the entity segregates the funds.See 70 Opinions of the Attorney General at 103 n. 2. Such a scenario seems very unlikely in a situation where the funds are intended for a party's administrative expenses, as there appears little reason for the campaign finance entity to serve as an intermediary — the donor could simply give the money directly to the party and designate it for administrative expenses.
[16] Current law similarly requires a campaign finance report to include "all contributions made and all expenditures made by or on behalf of the campaign finance entity during the designated reporting period." EL § 13-304(b).
[17] As explained, in Part I of this Opinion, the 2002 Revisor's Note stated that the revision of EL § 13-226 was not intended to affect the longstanding interpretations of this provision in Attorney General opinions. *Page 107